IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

STEVEN CRUMP,

   **Plaintiff,**

   v.            CASE NO. 24-3063-JWL

(FNU) (LUN) (1), Chief, Olathe
Police Department, et al.,

   **Defendants.**

## MEMORANDUM AND ORDER TO SHOW CAUSE

Plaintiff Steven Crump is hereby required to show good cause, in writing to the undersigned, why the Court should not abstain from hearing this matter under *Younger v. Harris*, 401 U.S. 37, 45 (1971).

### I.  Nature of the Matter before the Court

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983. Plaintiff is in custody at the Johnson County Adult Detention Center in New Century, Kansas ("JCADC"). The Court grants Plaintiff's motion for leave to proceed in forma pauperis.

Plaintiff claims in his Complaint that on July 4, 2023, he was walking down the street in Olathe, Kansas, when he was ambushed and "tortured" in broad daylight. (Doc. 1, at 2.) Plaintiff alleges that he "was discriminated against due to his psychiatric disabilities" and was targeted by the Defendants. *Id*. Plaintiff alleges that officers tried to run him over "with a 3 ton vehicle, shot him in the spine with a 12-guage less-lethal round from 15 ft away, tased him in the back of his head in dart mode, body slammed him, fully restrained him while forcing the K-9 to rip chunks of flesh from [his] legs, handcuffed him so tight he has permanent nerve damage, [and] broke his left ankle while cuffed." *Id*.

1

Plaintiff alleges that in his confusion, he picked up a rock to use as a shield. *Id*. at 14. Plaintiff alleges that when he was complying with orders to drop the rock by placing one hand in the air and slowly rotating his body to place the rock on the ground, officers shot him in the spine without warning. *Id*. at 14–16. Plaintiff alleges that after he was shot in the spine, he "went into flight mode, a hysterical fear" and tried to hide and then made his way to a building "hoping to get help." *Id*. at 21. Plaintiff alleges that the second officer then shot a taser in the back of Plaintiff's head and neck, leaving Plaintiff with injuries, including severe nerve damage. *Id*. Plaintiff claims that he dropped the rock when he was hit with the taser. *Id*. at 22. Plaintiff alleges that he was body-slammed when he was attempting to surrender. *Id*. at 23. Plaintiff claims that the officers then used the canine, without warning, to torture Plaintiff while he was restrained. *Id*. at 25. Plaintiff states that his ankle was twisted, the tendons in his ankle were severed, and handcuffs were then placed on Plaintiff so tightly that they caused nerve damage to his wrists. *Id*.

Plaintiff alleges that the police officers misperceived his psychiatric disability as a criminal action. *Id*. at 7. Plaintiff alleges that the officers were responding to a medical emergency but treated Plaintiff as an armed, fleeing suspect. *Id*. at 8. Plaintiff alleges that the officers used excessive force and conducted an illegal stop and seizure. *Id*. at 8–9. Plaintiff alleges that he was falsely charged with a crime and falsely imprisoned. *Id*. at 12. Plaintiff alleges that he was arrested "to cover-up the reckless, criminal actions by the two officers and to hide [Plaintiff's] physical injuries." *Id*. at 28.

Plaintiff alleges that the District Attorney's Office is running a cover-up for the police brutality and offered Plaintiff a plea deal to allow Plaintiff to pursue civil actions. *Id*. at 5. Plaintiff alleges that the District Attorney knows Plaintiff committed no crime, yet wrongfully

protects and supports the police officers. *Id*. Plaintiff alleges that the municipality failed to properly train its officers. *Id*. at 17. Plaintiff claims that the "Shift Commander" deployed the Special Response Unit to a medical call and approved their attack on Plaintiff. *Id*. at 39.

Plaintiff also alleges that he has not been provided with adequate medical care at JCADC because his leg began to stink of decay and rot, he was not provided a second mattress for his dislocated spine, and for five months he was denied a "wheelchair, cane, handicap shower . . . back brace, proper diet, vitamins or pain medication appropriate for severe nerve damage and dislocated spine and ankle." *Id*. at 45. Plaintiff alleges that he has suffered two heart attacks due to the "experimental" blood thinners prescribed to him by medical. *Id*.

Plaintiff also names the "City of Olathe Superintendent" and the Olathe Police Department's Chief of Police as defendants, alleging that they are policy makers and that there is a custom of using excessive force in the department. *Id*. at 1. Plaintiff seeks compensatory and punitive damages. *Id*. at 6.

## II. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988)

(citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v.*

4

*Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).  As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief."  *Kay*, 500 F.3d at 1218 (citation omitted).  Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'"  *Smith*, 561 F.3d at 1098 (citation omitted).  "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible."  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III.  DISCUSSION

The Court may be prohibited from hearing Plaintiff's claims regarding his state court proceedings under *Younger v. Harris*, 401 U.S. 37, 45 (1971).  "The *Younger* doctrine requires a federal court to abstain from hearing a case where . . . (1) state judicial proceedings are ongoing; (2) [that] implicate an important state interest; and (3) the state proceedings offer an adequate opportunity to litigate federal constitutional issues."  *Buck v. Myers*, 244 F. App'x 193, 197 (10th Cir. 2007) (unpublished) (citing *Winnebago Tribe of Neb. v. Stovall*, 341 F.3d 1202, 1204 (10th Cir. 2003); *see also Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)).  "Once these three conditions are met, Younger abstention is non-discretionary and, absent extraordinary circumstances, a district court is required to abstain."  *Buck*, 244 F. App'x at 197 (citing *Crown Point I, LLC v. Intermountain Rural Elec. Ass'n*, 319 F.3d 1211, 1215 (10th Cir. 2003)).

Plaintiff acknowledges that his claims relate to his pending state criminal proceedings in

Johnson, Kansas, where he is charged with aggravated assault on a law enforcement officer. *See State v. Crump*, Case No. 23CR02273 (District Court of Johnson County, Kansas) (filed July 5, 2023). Therefore, it appears that the first and second conditions for *Younger* abstention would be met because Kansas undoubtedly has an important interest in enforcing its criminal laws through criminal proceedings in the state's courts. *In re Troff*, 488 F.3d 1237, 1240 (10th Cir. 2007) ("[S]tate control over criminal justice [is] a lynchpin in the unique balance of interests" described as "Our Federalism.") (citing *Younger*, 401 U.S. at 44). Likewise, the third condition would be met because Kansas courts provide Plaintiff with an adequate forum to litigate his constitutional claims by way of pretrial proceedings, trial, and direct appeal after conviction and sentence, as well as post-conviction remedies. *See Capps v. Sullivan*, 13 F.3d 350, 354 n.2 (10th Cir. 1993) ("[F]ederal courts should abstain from the exercise of . . . jurisdiction if the issues raised . . . may be resolved either by trial on the merits in the state court or by other [available] state procedures.") (quotation omitted); *see Robb v. Connolly*, 111 U.S. 624, 637 (1984) (state courts have obligation 'to guard, enforce, and protect every right granted or secured by the constitution of the United States . . . .'"); *Steffel v. Thompson*, 415 U.S. 452, 460–61 (1974) (pendant state proceeding, in all but unusual cases, would provide federal plaintiff with necessary vehicle for vindicating constitutional rights).

"[T]he *Younger* doctrine extends to federal claims for monetary relief when a judgment for the plaintiff would have preclusive effects on a pending state-court proceeding." *D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1228 (10th Cir. 2004). *See Garza v. Burnett*, 672 F.3d 1217, 1220 (10th Cir. 2012) (citing *Wallace v. Kato*, 549 U.S. 384, 393 (2007)); *Myers v. Garff*, 876 F.2d 79, 81 (10th Cir. 1989) (directing district court to stay claim for damages).

Plaintiff should show good cause why the Court should not abstain from hearing his

6

claims regarding his state court proceedings in the District Court of Johnson County, Kansas.

Although Plaintiff also alleges that he has not received adequate medical care for his injuries, he has already filed a case regarding his medical care and it remains pending.  *See Crump v. Unified Gov't of Johnson Cty.*, Case No. 24-3036-JWL.  The Court ordered a *Martinez* Report regarding Plaintiff's claims in that case.  *See id*. at Doc. 7.   Therefore, these same claims in the current case are subject to dismissal as duplicative.

## IV. Motion for Partial Summary Judgment and Preliminary Injunction

Plaintiff has filed a motion (Doc. 3) seeking partial summary judgment and a preliminary injunction.  Plaintiff argues that he is entitled to judgment because his claim regarding the use of excessive force in the K-9 attack "is undisputable."  (Doc. 3, at 1.)  Plaintiff asks the Court to "begin negotiations between the Plaintiff and Defendant" on this claim and to deny qualified immunity.  *Id*. at 2.

Plaintiff's claims have not survived screening and the Defendants have not been served in this case.  Therefore, any request for a partial judgment is premature.  Furthermore, the Court is directing Plaintiff to show good cause why the Court should not abstain under *Younger*.  Therefore, any request for a partial judgment or injunctive relief is premature and therefore denied.

## V. Response Required

Plaintiff is required to show good cause why the Court should not abstain under *Younger* and dismiss this case without prejudice or stay this case pending resolution of his state criminal case.  Failure to respond by the deadline may result in dismissal of this case without prejudice and without further notice.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion for Leave to Proceed In Forma Pauperis (Doc. 2) is **granted.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment and Preliminary Injunction (Doc. 3) is **denied.**

**IT IS FURTHER ORDERED** that Plaintiff is granted until **June 21, 2024,** in which to show good cause, in writing to the undersigned, why the Court should not abstain from hearing this matter under *Younger v. Harris*, 401 U.S. 37, 45 (1971).

**IT IS SO ORDERED**.

**Dated May 22, 2024, in Kansas City, Kansas.**

                                              <u>S/ John W. Lungstrum</u>
                                              JOHN W. LUNGSTRUM
                                              UNITED STATES DISTRICT JUDGE