**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**STEVEN CRUMP,**

**Plaintiff,**

**v.** **CASE NO. 24-3063-JWL**

**(FNU) (LUN) (1), Chief, Olathe Police Department, et al.,**

**Defendants.**

**MEMORANDUM AND ORDER**

Plaintiff Steven Crump is hereby required to show good cause, in writing to the undersigned, why the following claims should not be dismissed for the reasons set forth in this Memorandum and Order: Plaintiff's Fourteenth Amendment claim based on excessive force; Plaintiff's Fourteenth Amendment claim based on reprehensible conduct; Plaintiff's claim for abuse of discretion; Plaintiff's claim under 15 U.S.C. § 1117(a); Plaintiff's Fourteenth Amendment equal rights claim; and Plaintiff's claim under 42 U.S.C. § 1981.

The Court finds that the proper processing of Plaintiff's remaining claims cannot be achieved without additional information from appropriate Olathe Police Department ("OPD") officials. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991). Accordingly, the Court orders the appropriate OPD officials to prepare and file a *Martinez* Report on these claims.

## I. Nature of the Matter before the Court

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983. At the time of filing, Plaintiff was in custody at the Johnson County Adult Detention Center in New Century,

Kansas. Plaintiff is now housed at the Johnson County Adult Residential Center in New Century, Kansas. The Court granted Plaintiff leave to proceed in forma pauperis.

This matter was stayed pending the resolution of Plaintiff's state criminal proceedings. The stay was lifted, and the Court screened Plaintiff's Amended Complaint at Doc. 15. On February 27, 2025, the Court entered a Memorandum and Order (Doc. 25) ("M&O") granting Plaintiff an opportunity to file a second amended complaint to cure the deficiencies noted in the M&O. This matter is before the Court for screening Plaintiff's Second Amended Complaint at Doc. 27. The Court's screening standards are set forth in the Court's Memorandum and Order to Show Cause at Doc. 7 ("MOSC").

In his Second Amended Complaint (Doc. 27) ("SAC"), Plaintiff alleges that on July 4, 2023, he was not a fugitive when he was walking down the street suffering from physical and mental distress. (Doc. 27, at 2, 14.) Plaintiff acknowledges that he was holding a rock, but argues that he was not using it in a threatening manner. *Id*. at 5. Plaintiff alleges that he was trying to wave down a vehicle for help. *Id*. at 14.

Plaintiff alleges that OPD officers arrived and tried to kill him by running him over, and by shooting him in the spine with a less lethal round, permanently crippling him without warning. *Id*. Plaintiff alleges that Officer Gunthrie tried to run over Plaintiff with his vehicle. *Id*. at 7–8. Plaintiff alleges that Officer Clavsius arrived on the scene with his K-9 and instructed Gunthrie to bean bag Plaintiff, and then Gunthrie told Officer Wray to shoot Plaintiff. *Id*. at 16. Plaintiff alleges that Officer Wray shot Plaintiff in the spine with a less-lethal round (bean bag) without giving Plaintiff any warning or instructions. *Id*. at 8. Plaintiff alleges that he posed no threat and was 100 feet from Officers Gunthrie and Wray when he was shot in the back. *Id*. at 5. Plaintiff also alleges that Officer Clavsius tased him without warning and commanded his K-9 to

bite Plaintiff five times while Plaintiff was restrained on the ground by Officer Lazzaro. *Id*. at 10. Plaintiff alleges that the dog chewed off half of Plaintiff's calf. *Id*.

Plaintiff alleges that Officer Lazzaro body-slammed Plaintiff while Plaintiff had his hands up, and then restrained Plaintiff while adjusting his body in order to hold out Plaintiff's leg so that the K-9 could bite Plaintiff five times. *Id*. at 12, 17. Plaintiff alleges that "an officer" took Plaintiff's severely injured left leg and "ground it into the hot pavement" and while doing this "put his weight down upon [Plaintiff's] ankle with his knee and by slamming, grinding his weight on the ankle bone tore off the tendon and ligaments which has made [Plaintiff's] left leg, left foot unusable." *Id*. at 17. Plaintiff alleges that the officers did not identify themselves, did not use lights or sirens, and did not give warnings. *Id*. at 6, 14.

Plaintiff alleges that the OPD and the Chief of Police Mike Butaud failed to oversee and train its officers on how to interact with persons known to suffer from a psychiatric disability. *Id*. at 1. Plaintiff alleges that the Police Department killed a person in *Arnold v. City of Olathe*, when Butaud was Deputy Chief, and failed to correct the deficiencies in the OPD. *Id*. at 2. Plaintiff alleges that officers were not properly trained on the use of force, crisis management, and de-escalation. *Id*. at 3. Plaintiff alleges that OPD officers were found liable for excessive force on these same claims in *Varnas v. Thompson*. *Id*. Plaintiff alleges that OPD officers have a pattern of using excessive force during welfare checks. *Id*.

Plaintiff alleges that Officer Gunthrie made false allegations in the police report that resulted in Plaintiff's false arrest, malicious prosecution, and false imprisonment. *Id*. at 4. Plaintiff alleges that Officer Gunthrie made false claims that Plaintiff tried to attack Gunthrie with the rock. *Id*. at 15. Plaintiff alleges that Sgt. Wyrick is a supervisor that failed to train officers, and that he signed a sworn affidavit "of a crime [Plaintiff] did not commit" in order to

cover up police brutality and misconduct. *Id*. at 6. Plaintiff also alleges that Sgt. Wyrick was in communication with the responding officers and gave them permission to use deadly force against Plaintiff. *Id*.

As Count I, Plaintiff alleges excessive force in violation of the Fourth Amendment based on his encounter with OPD officers. *Id*. at 37. As Count II, Plaintiff alleges excessive force in violation of the Fourteenth Amendment based on the same encounter. *Id*. As Count III, Plaintiff alleges a Fourth Amendment illegal seizure claim, alleging that officers illegally stopped him, failed to identify themselves, failed to inform Plaintiff that he was under arrest, and never clearly articulated a reasonable suspicion of a crime. *Id*. at 38. Plaintiff has also alleged false imprisonment and malicious prosecution.

Plaintiff names as defendants: the OPD; City of Olathe Commissioners; City of Olathe; Mike Butaud, OPD Chief of Police; Billy Wyrick, OPD Sergeant; John Gunthrie, OPD Officer; Adam Wray, OPD Officer; Kyle Clavsius, OPD Officer, and (fnu) Lazzaro, OPD Officer. For relief, Plaintiff seeks $13 million in compensatory damages, $8 million in punitive damages, and $25 million per year of false imprisonment-malicious prosecution. *Id*. at 39.

## III. DISCUSSION

### 1. Rule 8

The Court found in the M&O that Plaintiff's Amended Complaint used the Court-approved form, but included over 30 additional pages of handwritten allegations that were not organized into counts. (Doc. 25, at 3.) The Court cautioned Plaintiff that "[i]n filing a second amended complaint, Plaintiff must comply with Fed. R. Civ. P. 8's pleading standards." *Id*. The Court stated that:

> All of Plaintiff's claims should be submitted on the Court-approved form utilizing the areas for setting forth his individual

> counts or claims. The Court is not required to sift through various affidavits and handwritten dialogue to determine Plaintiff's claims. Plaintiff does not need to resubmit his exhibits, including his photographs. *See* Doc. 23–1; Doc. 23–2; Doc. 23–3; and Doc. 24.

*Id*.

Despite the Court's admonition, Plaintiff's SAC also contains over 30 additional pages of handwritten allegations that are not properly organized into counts on the Court-approved form. Plaintiff lists additional counts in his attached handwritten pages as follows: Count 4 – 14th Amendment Reprehensible Conduct; Count 5 – Abuse of Discretion; Count 6 – 15 U.S.C. § 1117(a); Count 7 – Malicious Prosecution; Count 8 – 14th Amendment Intentional and Negligent Infliction of Emotional Distress; Count 9 – 14th Amendment Equal Rights; Count 10 – § 1981; and Count 11 – ADA Title II, 42 U.S.C. § 12132.

Plaintiff's malicious prosecution/false imprisonment claim is included in Plaintiff's Fourth Amendment claim in Count III. Plaintiff's ADA claim is discussed below and is not subject to dismissal at this time. None of the other additional counts state a valid claim for relief and are subject to dismissal. Plaintiff has failed to state a claim based on reprehensible conduct or abuse of discretion. He provides no explanation for these claims other than to state that they entitle him to punitive or double damages. (Doc. 27, at 18.) Section 1117 of Title 15 deals with trademarks and damages based on "a violation of any right of the registrant of a mark registered in the Patent and Trademark Office." *See* 15 U.S.C. § 1117(a). That statute does not apply in this case.

Plaintiff alleges intentional and negligent infliction of emotional distress in violation of the Fourteenth Amendment. However, these are state law claims. Plaintiff alleges that this claim is based on "torture." (Doc. 27, at 18.) Plaintiff has also included a running dialogue under the heading "State Claims," that addresses the damages he believes he is entitled to and the

details of his alleged injuries. It also includes citations to case law and references to terms like "respondeat superior," "deliberate indifference," "gross negligence," "failure to investigate," "breach of duty," and "Superior Liability." *Id*. at 23–26. Plaintiff also references causes of action that are criminal in nature. *Id*. at 25–26. Plaintiff also references his medical care, which is the subject of one of his other cases.[1] *Id*. at 22, 27. Plaintiff also references a claim for defamation. *Id*. at 28.

The only state law claims the Court can decipher from Plaintiff's dialogue, is a claim for negligent/intentional infliction of emotional distress, negligence, and defamation. The Court has advised Plaintiff that his causes of action should be set forth in counts on the Court-approved form and that the Court is not required to sift through various affidavits and handwritten dialogue to determine Plaintiff's claims. The Court will not dismiss the state law claims for negligent/intentional infliction of emotional distress, negligence, and defamation at this time, but if none of Plaintiff's federal claims survive screening, the Court may decline to exercise supplemental jurisdiction over any state law claims. Plaintiff should clarify in his response if he believes he has asserted any additional state law causes of action. It also appears that Plaintiff has pending state court actions that may address his state law claims. He filed an action against Megan Ahsens, Jonathan Gunthrie, Samantha Shannon, and Billy Wyrick, then filed a "Motion to Place on Hold," indicating that he would pursue the case if the Federal Court does not take jurisdiction over the claims. *See Crump v. Gunthrie*, Case No. 24CV03729 (District Court of Johnson County, Kansas, filed July 22, 2024); *see also Crump v. Olathe Chief of Police*, Case

---

[1] The Court found in the MOSC that:

> Although Plaintiff also alleges that he has not received adequate medical care for his injuries, he has already filed a case regarding his medical care and it remains pending. *See Crump v. Unified Gov't of Johnson Cty.*, Case No. 24-3036-JWL. The Court ordered a *Martinez* Report regarding Plaintiff's claims in that case. *See id*. at Doc. 7. Therefore, these same claims in the current case are subject to dismissal as duplicative.

(Doc. 7, at 7.)

No. 24CV02737 (District Court of Johnson County, Kansas, filed May 30, 2024) (with Plaintiff filing a similar Motion to Place Case on Hold).

Plaintiff has provided no factual allegations to support a Fourth Amendment equal rights claim or a claim under § 1981. Plaintiff alleges that Defendants violated his due process rights through "selective enforcement and apprehension of a person who suffers from mental illness." (Doc. 27, at 18.) Plaintiff alleges that Defendants treated him differently because he was suffering from mental illness. However, Plaintiff states that the OPD officers were responding to 911 calls regarding Plaintiff, not due to selective enforcement. *See id.* at 14 ("A person called 911 to report Crump having been walking in the street possibly needing help. . . . Crump had tried to wave down the vehicle that passed, but the driver only called the police."). Plaintiff also alleges in his SAC that he should have been treated differently due to his mental illness, but was not. Plaintiff has failed to state a claim based on discrimination or the denial of equal protection.

"To establish a claim under § 1981, Plaintiff must show that he is '(1) [a] member[ ] of a protected class; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination interfered with a protected activity as defined in § 1981.'" *Phan v. Nat'l Jewish Health*, 2018 WL 10425416, at *2 (D. Colo. 2018), *aff'd* 762 F. App'x 502 (2019) (citing *Shawl v. Dillard's Inc.*, 17 F. App'x 908, 911 (10th Cir. 2001)). Plaintiff has not alleged sufficient facts suggesting that he was discriminated against on the basis of his race or otherwise.[2]

The Court also finds that Plaintiff's Fourteenth Amendment claim based on excessive force is subject to dismissal. As set forth below, his excessive force claim is properly cognizable under the Fourth Amendment.

---

[2] In discussing the failure to train, Plaintiff makes the bald conclusion, without factual support, that he is white and "[t]he Police Chief maintains a discrimination against 'whites.'" (Doc. 27, at 32.) Plaintiff then suggests that the discrimination is the result of training the police to prevent police brutality against people of color (based on riots reported in the media), but not training them to prevent police brutality against white people. *Id*. at 32–33. These bald conclusions do not support a claim of discrimination.

**2. Fourth Amendment Claims**

**A. Excessive Force**

"Excessive force claims are cognizable under the Fourth, Fifth, Eighth, and Fourteenth Amendment, depending on where in the criminal justice system the plaintiff is at the time of the challenged use of force." *Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1169 (10th Cir. 2021) (citation omitted). "When an 'excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment.'" *Id*. (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)).

"To state an excessive force claim under the Fourth Amendment, plaintiffs must show *both* that a seizure occurred and that the seizure was unreasonable." *Id.* (quoting *Bond v. City of Tahlequah*, 981 F.3d 808, 815 (10th Cir. 2020) (emphasis in original) (quotation marks omitted)). In assessing reasonableness, a court "looks at the facts and circumstances as they existed at the moment the force was used, while also taking into consideration the events leading up to that moment." *Id*. (quoting *Emmett v. Armstrong*, 973 F.3d 1127, 1135 (10th Cir. 2020)). The inquiry is an objective one, and one that considers the totality of the circumstances. *Id*. (citation omitted). Reasonableness is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. (quoting *Graham*, 490 U.S. at 396). "The right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion . . . to effect it." *Edwards v. City of Muskogee, Oklahoma*, 841 F. App'x 79, 83 (10th Cir. 2021) (unpublished) (quoting *Lundstrom v. Romero*, 616 F.3d 1108, 1126 (10th Cir. 2010) (internal quotation marks omitted)). "Reasonableness does not require that officers use alternative or less intrusive means if the conduct is otherwise reasonable." *Arnold v. City of*

*Olathe, Kansas*, Case No. 2:18-cv-02703-HLT, 2021 WL 3129408, at *8 (D. Kan. July 23, 2021) (citation omitted).

The Supreme Court in *Graham* outlined three factors that guide the reasonableness analysis: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Vette*, 989 F.3d at 1169 (quoting *Graham*, 490 U.S. at 396). In evaluating the third factor, a court considers "whether the plaintiff was fleeing or actively resisting at the 'precise moment' the officer employed the challenged use of force." *Id*. (citation omitted). The Tenth Circuit has also held that "initial resistance does not justify the continuation of force once the resistance ceases." *McCoy v. Meyers*, 887 F.3d 1034, 1051 (10th Cir. 2018) (citations omitted).

**B. Illegal Seizure/False Imprisonment/Malicious Prosecution**

"To determine whether a claim is for malicious prosecution or false imprisonment, the Tenth Circuit looks to whether the alleged detention occurred before or after the institution of legal process." *McIntyre v. Unified Gov't of Wyandotte Cty. and Kansas City, Kansas*, 2020 WL 1028303, at *7 (D. Kan. March 3, 2020) (citing *Myers v. Koopman*, 738 F.3d 1190, 1194 (10th Cir. 2013), *as amended on denial of reh'g* (Jan. 8, 2014)). "If plaintiff's detention occurred before he received legal process, he can assert a claim for false imprisonment." *Id*. (citing *see Wallace v. Kato*, 549 U.S. 384, 389 (2007) (false imprisonment claim where defendants did not have warrant for plaintiff's arrest)). A "plaintiff has a viable false imprisonment claim if he alleges that his detention occurred *without legal process*." *Id*. (citing *Wallace,* 549 U.S. at 389). "By contrast, if plaintiff's alleged detention occurred *with legal process*, he can assert a claim for malicious prosecution." *Id*. (citing *Wilkins v. DeReyes*, 528 F.3d 790, 795 (10th Cir. 2008)

(malicious prosecution claim where defendants arrested plaintiff with arrest warrant obtained with fabricated evidence and coercive interrogation techniques)).

"If the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment." *Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 360, 367 (2017) ("The Fourth Amendment, this Court has recognized, establishes 'the standards and procedures' governing pretrial detention . . . [a]nd those constitutional protections apply even after the start of 'legal process' in a criminal case—here, that is, after the judge's determination of probable cause.") (citations omitted); *see also Thompson v. Clark*, 596 U.S. 36, 42 (2021) (noting that a Fourth Amendment claim under § 1983 for malicious prosecution is "sometimes referred to as a claim for unreasonable seizure pursuant to legal process"). "The Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause." *Manuel*, 580 U.S. at 367 (this can occur when legal process itself goes wrong—when, for example, a judge's probable-cause determination is predicated solely on a police officer's false statements).

A § 1983 malicious prosecution claim includes five elements: "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff*;* (3) no probable cause supported the arrest, confinement, or prosecution; (4) the defendant acted maliciously; and (5) the plaintiff sustained damages." *Shrum v. Cooke*, 60 F.4th 1304, 1310 (10th Cir. 2023) (emphasis removed) (citation omitted). The Supreme Court has clarified that "a criminal prosecution terminates favorably, for the purposes of a § 1983 malicious prosecution claim, when the prosecution ends without a conviction." *Id*. at 1311 (citing *Thompson v. Clark*, 596 U.S. 36, 142 S. Ct. 1332, 1335 (2022)).

Plaintiff must show that no probable cause supported his arrest, confinement, or prosecution. "[P]robable cause does not require proof beyond a reasonable doubt or even a preponderance of the evidence." *Shed v. Okla. Dep't of Human Servs.*, 729 F. App'x 653, 657 (10th Cir. 2018) (unpublished). "Instead, the relevant question is whether a substantial probability existed that the suspect committed the crime, requiring something more than a bare suspicion." *Id*. (quoting *Kerns v. Bader*, 663 F.3d 1173, 1188 (10th Cir. 2011) (citation and internal quotation marks omitted); *see also Taylor v. Meacham*, 82 F.3d 1556, 1562 (10th Cir. 1996) ("Probable cause for an arrest warrant is established by demonstrating a substantial probability that a crime has been committed and that a specific individual committed the crime.") (internal quotation marks omitted)).

"Even if an officer 'subjectively intended to base the arrest on an offense for which probable cause is lacking,' no Fourth Amendment violation occurs as 'long as the circumstances, viewed objectively, justify the arrest.' " *Horocofsky v. City of Lawrence*, 2022 WL 1421554, at *23 (D. Kan. May 5, 2022) (citing *McKnight v. City of Topeka*, 2020 WL 5747917, at *19 (D. Kan. 2020) (quoting *Quinn v. Young*, 780 F.3d 998, 1006 (10th Cir. 2015)). "[I]t is a Fourth Amendment violation to 'knowingly or recklessly omit from the affidavit information which, if included, would have vitiated probable cause.' " *Id*. (citing *Taylor*, 82 F.3d at 1562 (quoting *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir.1996)). If information has been omitted from an affidavit, the court asks "if the affidavit would still have given rise to probable cause for the warrant" with the missing information added. *Id*. (quoting *Steward v. Donges*, 915 F.2d 572, 582 n.13 (10th Cir. 1990)).

"Probable cause is measured by considering whether, 'without the falsified inculpatory evidence, or with the withheld exculpatory evidence, there would be no probable cause for

[plaintiff's] continued confinement or prosecution." *Bledsoe v. Carreno*, 53 F.4th 589, 614–15 (10th Cir. 2022) (citation omitted). Plaintiff alleges that Officer Gunthrie made false allegations in the police report that resulted in Plaintiff's false arrest, malicious prosecution, and false imprisonment. He also alleges that Sgt. Wyrick signed a sworn affidavit "of a crime [Plaintiff] did not commit" in order to cover up police brutality and misconduct.

"The chain of causation is broken by a preliminary hearing 'in which a judge independently listened to testimony, evaluated the credibility of those testifying, reviewed evidence, and concluded that the evidence was sufficient to bind [a defendant] over for trial." *Horocofsky*, 2022 WL 1421554, at *26. Thus, "a preliminary hearing may serve as a break in the chain of causation even if the original affidavit for arrest otherwise lacks probable cause." *Id*.

The Tenth Circuit observed in *Taylor v. Meacham* that "the chain of causation [in a malicious prosecution action] is broken by an indictment, absent an allegation of pressure or influence exerted by the police officers, or knowing misstatements made by the officers to the prosecutor." *Id*. at *24 (citing *Taylor*, 82 F.3d at 1564 (quoting *Reed v. City of Chicago*, 77 F.3d 1049 (7th Cir. 1996), *see also Barham v. Town of Greybull Wyo.*, 483 F. App'x 506, 509 (10th Cir. 2012) (Where plaintiff failed to allege "any pressure or influence or made any knowing misstatements to the prosecutor, and thus the chain of causation was broken by the prosecutor's decision to file charges as well as by the state court's decision to bind Plaintiff over at the preliminary hearing.")).

Plaintiff acknowledged that his claims were related to his state criminal proceedings in Johnson County, Kansas, where he was charged with aggravated assault on a law enforcement officer. *See State v. Crump*, Case No. 23CR02273 (District Court of Johnson County, Kansas)

(filed July 5, 2023). Plaintiff alleges that the false criminal charges were based on falsified information. (Doc. 27, at 6.) Plaintiff alleges that he was charged with eight felonies and seven charges were dropped by the district attorney, "leaving Crump with Agg. Assault in a defense to relieve the Municipal [sic] of its liability to excessive force." *Id*. at 34.

Despite Plaintiff's claim that he was left with one charge that was not dropped, the state court docket reflects that the case was dismissed without prejudice. *See State v. Crump*, Case No. 23CR02273 (January 21, 2025 Order of Dismissal). The docket also reflects a plea hearing on November 15, 2024, and Plaintiff's "Motion to Accept Plea Offer," where he agreed to accept the charge of "Level 9 Criminal Threat." *Id*. (November 22, 2024 Motion to Accept Plea Offer). It is unclear whether or not Plaintiff entered into a plea agreement or was found guilty on at least one charge.

If Plaintiff was convicted, and his claims in this case would necessarily imply the invalidity of his conviction, the claim may be barred by *Heck*. *See Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck v. Humphrey*, the United States Supreme Court held that when a state prisoner seeks damages in a § 1983 action, the district court must consider the following:

> whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Id*. at 487. In *Heck*, the Supreme Court held that a § 1983 damages claim that necessarily implicates the validity of the plaintiff's conviction or sentence is not cognizable unless and until the conviction or sentence is overturned, either on appeal, in a collateral proceeding, or by executive order. *Id*. at 486–87.

Even if Plaintiff was convicted, it is possible that Plaintiff's excessive force claim may not be barred by *Heck*, depending on the facts surrounding his arrest. "An excessive-force claim

against an officer is not necessarily inconsistent with a conviction for assaulting the officer." *Torres v. Madrid*, 60 F.4th 596, 600 (10th Cir. 2023) (citing *Havens v. Johnson*, 783 F.3d 776, 782 (10th Cir. 2015)). "For example, the claim may be that the officer used too much force to respond to the assault or that the officer used force after the need for force had disappeared." *Id.* "[I]n cases where there are multiple uses of force or a continuing use of force, *Heck* may bar the plaintiff's claims as to some force but not all." *Id*. at 600–01 (citing *Hooks v. Atoki*, 983 F.3d 1193, 1197, 1201 (10th Cir. 2020) (although *Heck* barred plaintiff, who had pleaded no contest to two counts of assault and battery on a police officer, from bringing excessive-force claims based on four uses of force involved in subduing him, "[t]he fifth and sixth uses of force [we]re different" and thus not barred by *Heck* because plaintiff had alleged that he "no longer posed a threat")).

In *Torres*, the Tenth Circuit reversed the decision finding plaintiff's claims were barred by *Heck* as inconsistent with plaintiff's no-contest pleas to charges of aggravated flight from a law-enforcement officer and assault upon a peace officer "because her pleas are not inconsistent with her claims that the officers used excessive force by firing at her after she had driven past them and no longer posed a threat to them." *Id*. at 599–600. "The analysis of whether *Heck* bars the entirety of a plaintiff's excessive-force claims thus requires 'compar[ing] the plaintiff's allegations to the offense [s]he committed." *Id*. at 601 (citing *Havens*, 783 F.3d at 782).

**C. Failure to Train**

Plaintiff alleges a failure to train OPD officers on the proper use of force, crisis management, and de-escalation. "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Wright v. City of Ponca City*, 2023 WL 5765848, at *7 (10th Cir. Sept. 7, 2023) (quoting *Monell v. Dep't of Soc. Servs*., 436 U.S. 658,

694 (1978); *see also id.* at 691 ("[A] municipality cannot be held liable under § 1983 on a respondeat superior theory.")). Instead, "the government as an entity" can only be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* (quoting *Monell*, 436 U.S. at 694). To establish municipal liability a plaintiff must demonstrate the existence of a "municipal policy or custom." *Id.* (quoting *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010)). Then the "plaintiff must demonstrate 'a direct causal link between the policy or custom and the injury alleged.'" *Id.* at n.9 (citing *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019) (quoting *Bryson*, 627 F.3d at 788)).

"[T]he Supreme Court has held that in 'limited circumstances,' a failure to train can be the basis for liability under § 1983." *Horocofsky v. City of Lawrence*, 2022 WL 1421554, at *29 (D. Kan. May 5, 2022) (citing *City of Canton v. Harris*, 489 U.S. 378, 387 (1989)). Only when a municipality's failure to train employees evidences a " 'deliberate indifference' to the rights of inhabitants" can a failure to train be considered "a city 'policy or custom' that is actionable under § 1983." *Id.* (quoting *Canton*, 489 U.S. at 389). To show deliberate indifference, a plaintiff must show that the municipality had "actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation," and a conscious or deliberate choice to disregard the harm. *Id.* (citation omitted).

**3. ADA Claim**

Plaintiff also alleges an ADA claim. The ADA prohibits discrimination by government entities on the basis of disability. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to

discrimination by any such entity." 42 U.S.C. § 12132.

"To state a claim under Title II of the ADA, a plaintiff must allege: (1) he is 'a qualified individual with a disability'; (2) he 'was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, or was otherwise discriminated against by the public entity'; and (3) 'such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.'" Crane, 15 F.4th at 1312 (quoting *J.V. v. Albuquerque Pub. Sch.*, 813 F.3d 1289, 1295 (10th Cir. 2016)). The inability to prove any one of these elements precludes an ADA claim. *Id*. "Courts have recognized three ways to establish a discrimination claim: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *J.V.*, 813 F.3d at 1295.

Plaintiff suggests that he was denied public services when he was allegedly attacked by officers and that Defendants failed to accommodate his psychiatric disabilities. *See* Doc. 27, at 29, 31. Plaintiff alleges that his claim is similar to the claim asserted in *Funke v. Hatten*, 2021 WL 2346003 (D. Nev. 2021). In *Funke*, the plaintiff alleged that the police officers failed to accommodate his disability in the course of his detention and arrest. *Id*. at *1. The court in *Funke* allowed the ADA claim against the police officers to "proceed and be construed as a single Title II claim against [the Las Vegas Metropolitan Police Department] based upon the official action of [the police officers]." *Id*. at *9.

**4. Olathe Police Department**

Plaintiff names the OPD as a defendant. The OPD is not a proper defendant, because "'police departments . . . are not suable entities under § 1983, because they lack legal identities apart from the municipality.'" *Young v. City of Albuquerque*, 77 F. Supp. 3d 1154, 1186 (D. N.M. 2014) (quoting *Ketchum v. Albuquerque Police Dep't*, 958 F.2d 381, 1992 WL 51481, at

*2 (10th Cir. March 12, 1992)). This Court has held that municipal police departments are subunits of city government and not legal entities subject to suit. *Roberts v. Unknown Wichita Police Officers*, 2019 WL 1790050, at *2 (D. Kan. April 24, 2019) (citing *Schwab v. Kansas*, 2017 WL 2831508, at *13 (D. Kan. June 30, 2017) (dismissing Riley County Police Department); *Butler v. Atchison Police Dep't*, 2019 WL 4640582, at *3 (D. Kan. 2019) ("This court has often held that local police departments, under Kansas law, are governmental sub-units which my not sue or be sued; instead the city or county is the proper defendant); *Neighbors v. Lawrence Police Dep't*, 2016 WL 3685355, at *6 (D. Kan. July 12, 2016); *Ward v. Lenexa, Kansas Police Dep't*, 2014 WL 1775612, at *4 (D. Kan. May 5, 2014)); *see also See Martinez v. Winner*, 771 F.2d 424, 444 (10th Cir. 1985) ("City of Denver Police Department" not "separate suable entity"). Plaintiff's claims against the OPD are dismissed.

**IV. Conclusion**

Plaintiff is ordered to show good cause why the following claims should not be dismissed for the reasons set forth in this Memorandum and Order: Plaintiff's Fourteenth Amendment claim based on excessive force; Plaintiff's Fourteenth Amendment claim based on reprehensible conduct; Plaintiff's claim for abuse of discretion; Plaintiff's claim under 15 U.S.C. § 1117(a); Plaintiff's Fourteenth Amendment equal rights claim; and Plaintiff's claim under 42 U.S.C. § 1981. Failure to respond by the deadline may result in dismissal of these claims without prior notice.

The Court finds that the proper processing of Plaintiff's remaining claims cannot be achieved without additional information from appropriate OPD officials. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991). Accordingly, the Court orders the appropriate OPD officials to prepare and file a *Martinez*

Report. Once the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915A.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's claims against the Olathe Police Department are **dismissed.**

**IT IS FURTHER ORDERED** that Plaintiff is granted until **May 30, 2025,** in which to show good cause why the following claims should not be dismissed for the reasons set forth in this Memorandum and Order**:** Plaintiff's Fourteenth Amendment claim based on excessive force; Plaintiff's Fourteenth Amendment claim based on reprehensible conduct; Plaintiff's claim for abuse of discretion; Plaintiff's claim under 15 U.S.C. § 1117(a); Plaintiff's Fourteenth Amendment equal rights claim; and Plaintiff's claim under 42 U.S.C. § 1981. Failure to respond by the deadline may result in dismissal of these claims without prior notice.

**IT IS FURTHER ORDERED** that**:**

(1) The OPD officials shall submit the *Martinez* Report by **June 13, 2025**. The Report need not address Plaintiff's claims that are subject to dismissal. The Report should focus on Plaintiff's Fourth Amendment claims, failure to train claim, and ADA claim. Upon the filing of that Report, the Court will screen Plaintiff's SAC. If the SAC survives screening, the Court will enter a separate order for effecting service on defendants.

(2) OPD officials are directed to undertake a review of the subject matter of the SAC:

a. To ascertain the facts and circumstances;

b. To consider whether any action can and should be taken to resolve the subject matter of the SAC; and

c. To determine whether other like complaints, whether pending in this Court or elsewhere, are related to this SAC and should be considered together.

(3) Upon completion of the review, a written report shall be compiled which shall be filed with the Court and served on Plaintiff. If the OPD officials wish to file any exhibits or portions of the report under seal or without service on Plaintiff, they must file such portions separately from the public report and provisionally under seal, to be followed immediately by a Motion to Seal or Redact Document(s). The OPD officials are exempt from filing the Notice of Proposed Sealed Record under D. Kan. Rule 5.4.2(b).

(4) Statements of all witnesses shall be in affidavit form. Copies of pertinent rules, regulations, official documents, and, wherever appropriate, the reports of medical or psychiatric examinations shall be included in the written report. Any recordings related to Plaintiff's claims shall also be included.

(5) Authorization is granted to the OPD officials to interview all witnesses having knowledge of the facts, including Plaintiff.

(6) No motion addressed to the SAC shall be filed until the *Martinez* Report required herein has been prepared.

(7) Discovery by Plaintiff shall not commence until Plaintiff has received and reviewed any Court-ordered answer or response to the SAC. This action is exempted from the requirements imposed under Fed. R. Civ. P. 26(a) and 26(f).

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter OPD Chief of Police Mike Butaud as an interested party on the docket for the limited purpose of preparing the *Martinez* Report ordered herein. Upon the filing of that report, the Chief of Police may move for termination from this action as interested party.

Copies of this order shall be transmitted to Plaintiff, to the OPD Chief of Police, and to the City Attorney for Olathe, Kansas.

**IT IS SO ORDERED**.

**Dated May 5, 2025, in Kansas City, Kansas.**

**S/ John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**