## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**STEVEN CRUMP,**

      **Plaintiff,**

      **v.**                        **CASE NO.  24-3063-JWL**

**(FNU) (LUN) (1), Chief, Olathe**
**Police Department, et al.,**

      **Defendants.**

### MEMORANDUM AND ORDER

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983.  At the time of filing, Plaintiff was in custody at the Johnson County Adult Detention Center in New Century, Kansas. Plaintiff is not currently in custody.  The Court granted Plaintiff leave to proceed in forma pauperis. This matter was stayed pending the resolution of Plaintiff's state criminal proceedings.  The stay was lifted, and the Court screened Plaintiff's Amended Complaint at Doc. 15.  On February 27, 2025, the Court entered a Memorandum and Order (Doc. 25) ("M&O") granting Plaintiff an opportunity to file a second amended complaint to cure the deficiencies noted in the M&O.

### I.  Nature of the Matter before the Court

Plaintiff filed a Second Amended Complaint (Doc. 27) ("SAC"), and on May 5, 2025, the Court entered a Memorandum and Order (Doc. 28) ("M&O II") ordering Plaintiff to show good cause why several claims in his SAC should not be dismissed for the reasons set forth in the M&O II.  The Court also dismissed Plaintiff's claims against the Olathe Police Department ("OPD").

Plaintiff filed a response to the M&O II.  (Doc. 29.)  After reviewing the response, the Court entered a Memorandum and Order (Doc. 31) ("M&O III") finding that Plaintiff failed to

show good cause and dismissing the following claims for failure to state a claim:  Plaintiff's Fourteenth Amendment claim based on excessive force; Plaintiff's Fourteenth Amendment claim based on reprehensible conduct; Plaintiff's claim for abuse of discretion; Plaintiff's claim under 15 U.S.C. § 1117(a); Plaintiff's Fourteenth Amendment equal rights claim; and Plaintiff's claim under 42 U.S.C. § 1981.  The Court also found in the M&O III that "Plaintiff's response sets forth multiple counts that were not included in his SAC."  (Doc. 31, at 6.)

The Court also found in the M&O II that the proper processing of Plaintiff's remaining claims could not be achieved without additional information from appropriate OPD officials.  *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991).  Accordingly, the Court ordered the appropriate OPD officials to prepare and file a *Martinez* Report on these claims.  The Court stated that "[t]he Report should focus on Plaintiff's Fourth Amendment claims, failure to train claim, and ADA claim."  (Doc. 28, at 18.)  The *Martinez* Report (Docs. 34, 61, and 62) (the "Report") has now been filed.  The Court's M&O II provides that "[o]nce the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915A."  (Doc. 28, at 18.)  The Court's screening standards are set forth in the Court's Memorandum and Order to Show Cause at Doc. 7.  Plaintiff's factual allegations in his SAC are set forth in detail in the M&O II.  In summary, Plaintiff's claims are based on alleged excessive force used during his encounter with OPD officers on July 4, 2023, and his criminal charges arising from the encounter that were subsequently dismissed.

## II.  DISCUSSION

### 1.  Remaining Claims Addressed in the Report

The Court ordered OPD officials to submit a *Martinez* report on Plaintiff's remaining claims:  Plaintiff's Fourth Amendment claims, failure to train claim, and ADA claim.  The Report

provides that:

1. On July 4, 2023, OPD Officers Guthrie, Wray, Clausius, and Lazzaro responded to a report of Steven Crump walking in the roadway, holding a rock, and appearing to be in mental distress. Exh. B, Decl. of Guthrie, ¶ 5; C, Decl. of Wray, ¶ 5; D, Decl. of Clausius, ¶ 5; A-1, Offense Report, p 4.

2. Officers Guthrie and Wray were the first OPD officers to arrive and interact with Crump. Exh. A-1, pp. 4, 7-11.

3. The officers gave repeated verbal commands to Mr. Crump, which he ignored. *Id.*

4. Officer Guthrie reported that Crump raised a large landscaping rock over his head and walked toward Guthrie in an aggressive manner. Officer Guthrie feared imminent harm. *Id.*

5. Officers Guthrie and Officer Wray re-entered their patrol vehicle and drove south past Crump to create distance. They turned around and observed Crump heading toward 751 N Nelson Rd. As he approached the property, the officers lost visual contact briefly. Crump reappeared and walked toward my locked patrol car, attempting to open the door. *Id.*

6. Officer Clausius arrived and blocked traffic further south. *Id.*

7. After retreating and repositioning, Officer Guthrie instructed Officer Wray to deploy a bean bag shotgun. Wray fired three rounds—two missed, and one struck Crump in the lower back. *Id.*

8. Crump fled to Officer Clausius's patrol car, attempted entry, and was met with Clausius and his K9. Officer Clausius deployed his Taser with limited effectiveness and then released his K9 partner. *Id.*

9. Officer Lazzaro tackled Crump, and the K9 bit Crump's left calf. *Id.*

10. Crump was then handcuffed and treated by MedAct before being transported to Olathe Medical Center and later booked into the Johnson County Adult Detention Center ("JCADC"). *Id.*

11. Officer Lazzaro accompanied Crump until he was cleared and booked in to the JCADC. *Id.*

12. OPD Officer interactions with Crump on July 4, 2023 were captured by several officer-worn body cameras. Exh. B, ¶ 8; C, ¶ 8, D, ¶ 17.

13. After the arrest, OPD Officers generated an arrest report detailing the encounter in detail. Exh. B, ¶ 7, C, ¶ 7, D, ¶ 16.

14. The Arrest Report details the officers' observations and actions and corroborates the sequence of events captured on the body cameras. Exh. B, ¶ 9; C, ¶ 9; D, ¶ 18; A-1, pp. 7-11.

15. OPD officers assert that commands were issued and force was applied in response to Crump's behavior and perceived threats. A-1, pp. 7-11.

(Doc. 34, at 2–3.)

The Interested Party supplemented the Report with video footage from the body-worn cameras of Officers Lazzaro, Martin, Guthrie, Goodwin, and Wray.  (Doc. 62, at Exhibits E–1 through E–14.)  The supplement also includes the Declaration of Wesley Smith (the official responsible for maintaining OPD official records), and photos from the scene of the incident (Exh. E–15) and from the Olathe Medical Center (Exh. E–16).  (Doc. 61–1, at 1–3, and 20–76.)

Plaintiff's claims are based on his interactions with OPD officers on July 4, 2023, when Plaintiff was walking down the street holding a large rock.  Plaintiff acknowledges that he was holding a rock, but argues that he was not using it in a threatening manner, and was trying to wave down a vehicle for help.  (Doc. 27, at 5, 14.)

Plaintiff makes multiple allegations in his SAC that are not supported by the bodycam videos.  Plaintiff alleges that OPD officers arrived and tried to kill him by running him over, and by shooting him in the spine with a less lethal round, permanently crippling him without warning.  *Id*. at 14.  Plaintiff alleges that Officer Gunthrie tried to run over Plaintiff with his vehicle.  *Id*. at 7–8.  Plaintiff alleges that Officer Wray shot Plaintiff in the spine with the bean bag without giving Plaintiff any warning or instructions.  *Id*. at 8.  Plaintiff also alleges that an officer took Plaintiff's severely injured leg and "ground it into the hot pavement" and while doing this "put his weight down upon [Plaintiff's] ankle with his knee and by slamming, grinding his weight on the ankle bone tore off the tendon and ligaments which has made [Plaintiff's] left leg, left foot unusable." *Id*. at 17.

The bodycam videos clearly show that Plaintiff was given multiple warnings and officers were attempting to help him.  They asked Plaintiff to get out of the middle of the road, stating that they did not want him to get hit by a car.  An officer started to get out of the car and then realized

Plaintiff had a rock and got back in the patrol car and turned the lights and siren on.  They asked Plaintiff to drop the rock so they could talk.  Plaintiff tried to open the driver's side door of the police car, but it was locked.  Officers again asked Plaintiff to drop the rock and told him they just wanted to get him help.  Plaintiff says it was supposed to be a one-on-one fight.  The officers tell Plaintiff they are worried about him because it is hot, and he has been walking around for hours. The officer asks him where he is wanting to go.   Before the officer shoots Plaintiff with the bean bag he yells "bean bag, bean bag, bean bag."  The first shot misses and they ask Plaintiff again to drop the rock.  They shoot another bean bag and order Plaintiff to get on the ground.  Plaintiff keeps walking with the rock and approaches another police car that pulled in front of him.  They continue to order him to drop the rock and get on the ground.  Instead, Plaintiff walks to the police car and tries to open the door.  Then Officer Clausius comes toward the car with the K-9.  Plaintiff fails to get on the ground as ordered.  The officer pushes Plaintiff to the ground and the K-9 bites Plaintiff on the calf.  Plaintiff still refuses to get on his stomach.  Officers turn him over and cuff him.  The officer tells Plaintiff they are going to get him help and Plaintiff responds that he doesn't want help, he wants to die.  Paramedics arrive to assist Plaintiff, and then he is transferred by ambulance to the hospital.  One of the officers indicate that this was their third interaction with Plaintiff that day.  A video of Plaintiff at the jail the next day shows Plaintiff apologizing and stating that he was hallucinating and thought the officers were coming to kill him.  He asks them to pass on that he is sorry.

Plaintiff alleges that an officer ground his leg into the hot pavement and "put his weight down upon [Plaintiff's] ankle with his knee and by slamming, grinding his weight on the ankle bone tore off the tendon and ligaments which has made [Plaintiff's] left leg, left foot unusable." This allegation is not supported by the videos and photos submitted with the Report.  Photos taken

at the Olathe Medical Center do not show a cast or bandage on Plaintiff's ankle and show that his

bean bag shot to the spine was assessed.[1]  *See*, Doc. 61–1, at 47–50.

Plaintiff filed a case is this Court based on his medical care following the incident.  The

findings in that case likewise do not support Plaintiff's allegations.  Plaintiff filed a case regarding

the medical care he received at the JCADC.  *See Crump v. Johnson Cty. Bd. Of Comm'rs*, Case

No. 24-3036-EFM.  The Court's Memorandum and Opinion in that case found the following

uncontroverted facts:

> After Plaintiff was arrested, he was transported by ambulance to the
> Olathe Medical Center ("OMC").  Plaintiff was treated at OMC and
> released that same day. After he was released from OMC, Plaintiff
> was transported to JCADC for booking.
>     In the early morning hours of July 5, 2023, Plaintiff
> underwent a medical screening as part of the JCADC booking
> process. This medical screening noted that Plaintiff had contusions
> on his back from the bean bag round, staples over the dog bite
> wound, and blisters on the bottom of his feet.
>
> * * * *
>
> On July 20, 2023, Plaintiff requested a refill of his pain medication
> and was seen in sick call. That same day Ms. Neely annotated in
> Plaintiff's record that his wheelchair use would be discontinued
> because the blisters on his feet had healed, and he had been walking
> to his medical appointments.
>
> * * * *
>
> On October 10, 2023, Plaintiff underwent the CT scan to determine
> if he suffered any spinal injuries. The imaging showed no fractures
> or malalignment.
>
> * * * *

---

[1]  Plaintiff filed an Affidavit of Statement Regarding Spinal Injury and Police Brutality by Officer Adam Wray (Doc. 72), stating that regarding the bean bag shot to his back "no disclosure of the injury was made to hospital personnel by law enforcement."  (Doc. 72, at 1.)  Plaintiff goes on to declare that "spinal specialists revealed two major fractures and one minor fracture consistent with a projectile or blunt-force impact."  Plaintiff's declarations are inconsistent with the videos, photos, and findings in Case No. 24-3036-EFM.

On November 7, 2023, Plaintiff had a follow-up appointment with medical staff regarding his back pain. Notes from this appointment indicate that the CT and x-rays were negative for acute osseous abnormalities and that Plaintiff was making little progress with the exercises and instructions provided by medical staff. After this appointment, Plaintiff was approved for the use of a cane.

* * * *

On November 22, 2023, Plaintiff attended a medical appointment in which he complained that his lower left leg tendon had detached. After evaluation, medical staff assured Plaintiff that his ability to move his foot both laterally and medially proved that his tendon was not detached.

* * * *

On February 24, 2024, Plaintiff attended a medical appointment again complaining that the tendon in his left ankle was not attached to the bone. Plaintiff was again assured that, because he could move his foot, his tendon was attached; Plaintiff was further encouraged to continue physical therapy exercises.

* * * *

On April 23, 2024, Plaintiff filed a medical grievance requesting a second mattress and a back brace. That same day, Plaintiff attended a medical appointment regarding his back pain. Medical staff reviewed his imaging studies, including the MRI, which found no evidence of fracture or malalignment, but evidence of degenerative arthritis and mild scoliosis. Medical staff opted to continue present treatment, prescribing conditioning and strength exercises.

*Crump v. Johnson Cty. Bd. of Comm'rs*, 2025 WL 1555025, at *2–4 (D. Kan. June 2, 2025).

Plaintiff's excessive force claims against Officers Lazzaro, Gunthrie, and Wray are subject to dismissal. "Excessive force claims are cognizable under the Fourth, Fifth, Eighth, and Fourteenth Amendment, depending on where in the criminal justice system the plaintiff is at the time of the challenged use of force." *Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1169 (10th Cir. 2021) (citation omitted). "When an 'excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections

of the Fourth Amendment.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)).

"To state an excessive force claim under the Fourth Amendment, plaintiffs must show *both* that a seizure occurred and that the seizure was unreasonable." *Id.* (quoting *Bond v. City of Tahlequah*, 981 F.3d 808, 815 (10th Cir. 2020) (emphasis in original) (quotation marks omitted)). In assessing reasonableness, a court "looks at the facts and circumstances as they existed at the moment the force was used, while also taking into consideration the events leading up to that moment." *Id.* (quoting *Emmett v. Armstrong*, 973 F.3d 1127, 1135 (10th Cir. 2020)). The inquiry is an objective one, and one that considers the totality of the circumstances. *Id.* (citation omitted). Reasonableness is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (quoting *Graham*, 490 U.S. at 396). "The right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion . . . to effect it." *Edwards v. City of Muskogee, Oklahoma*, 841 F. App'x 79, 83 (10th Cir. 2021) (unpublished) (quoting *Lundstrom v. Romero*, 616 F.3d 1108, 1126 (10th Cir. 2010) (internal quotation marks omitted)). "Reasonableness does not require that officers use alternative or less intrusive means if the conduct is otherwise reasonable." *Arnold v. City of Olathe, Kansas*, Case No. 2:18-cv-02703-HLT, 2021 WL 3129408, at *8 (D. Kan. July 23, 2021) (citation omitted).

The Supreme Court in *Graham* outlined three factors that guide the reasonableness analysis: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Vette*, 989 F.3d at 1169 (quoting *Graham*, 490 U.S. at 396)*.* In evaluating the third factor, a court considers "whether the plaintiff was fleeing or actively resisting at the 'precise moment' the officer employed the challenged use of force." *Id.* (citation omitted). The Tenth Circuit has also held that "initial resistance does not justify the continuation

8

of force once the resistance ceases." *McCoy v. Meyers*, 887 F.3d 1034, 1051 (10th Cir. 2018) (citations omitted).

Plaintiff's excessive force claims against Officers Lazzaro, Gunthrie, and Wray are subject to dismissal for failure to state a claim. Plaintiff's claims are not supported by the videos, photographs, and findings in Case No. 24-3036-EFM. The *Martinez* report developed as a means "to ascertain whether there is a factual as well as a legal basis for [a] prisoner's claims." *Gee v. Estes*, 829 F.2d 1005, 1007 (10th Cir. 1987). The report "is treated like an affidavit, and the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (citing *Sampley v. Ruettgers*, 704 F.2d 491, 493 n. 3 (10th Cir. 1983)). Thus, at this point in the proceedings the Court does not use the Report to resolve conflicts of fact. *See Swoboda v. Duback*, 992 F.2d 286, 290 (10th Cir. 1993) ("In determining whether a plaintiff has stated a claim, the district court may not look to the Martinez report, or any other pleading outside the complaint itself, to refute facts specifically pled by a plaintiff, or to resolve factual disputes."). However, the Tenth Circuit has held that "[w]here the video evidence blatantly contradicts a material fact allegation, we may disregard that allegation in favor of what is actually depicted on the video." *Blake v. Wallace*, 2024 WL 5087805, at *2 (10th Cir. Dec. 12, 2024) (unpublished) (citation omitted).

Plaintiff will be given an opportunity to respond to the Report and to show good cause why his excessive force claims against Officers Lazzaro, Gunthrie, and Wray should not be dismissed. Failure to respond by the Court's deadline may result in dismissal of these claims without further notice for failure to state a claim.

## 2. State Law Claims

The Court found in the M&O II that the only state law claims that the Court could decipher from Plaintiff's dialogue in the SAC, was a claim for negligent/intentional infliction of emotional distress, negligence, and defamation. (Doc. 28, at 6.) In the M&O III, the Court cited the Court's findings in the M&O II as follows:

> Plaintiff has also included a running dialogue under the heading "State Claims," that addresses the damages he believes he is entitled to and the details of his alleged injuries. It also includes citations to case law and references to terms like "respondeat superior," "deliberate indifference," "gross negligence," "failure to investigate," "breach of duty," and "Superior Liability." *Id*. at 23–26. Plaintiff also references causes of action that are criminal in nature. *Id*. at 25–26. Plaintiff also references his medical care, which is the subject of one of his other cases. *Id*. at 22, 27. Plaintiff also references a claim for defamation. *Id*. at 28.
>
> The only state law claims the Court can decipher from Plaintiff's dialogue, is a claim for negligent/intentional infliction of emotional distress, negligence, and defamation. The Court has advised Plaintiff that his causes of action should be set forth in counts on the Court-approved form and that the Court is not required to sift through various affidavits and handwritten dialogue to determine Plaintiff's claims. The Court will not dismiss the state law claims for negligent/intentional infliction of emotional distress, negligence, and defamation at this time, but if none of Plaintiff's federal claims survive screening, the Court may decline to exercise supplemental jurisdiction over any state law claims. Plaintiff should clarify in his response if he believes he has asserted any additional state law causes of action. It also appears that Plaintiff has pending state court actions that may address his state law claims. He filed an action against Megan Ahsens, Jonathan Gunthrie, Samantha Shannon, and Billy Wyrick, then filed a "Motion to Place on Hold," indicating that he would pursue the case if the Federal Court does not take jurisdiction over the claims. *See Crump v. Gunthrie*, Case No. 24CV03729 (District Court of Johnson County, Kansas, filed July 22, 2024); *see also Crump v. Olathe Chief of Police*, Case No. 24CV02737 (District Court of Johnson County, Kansas, filed May 30, 2024) (with Plaintiff filing a similar Motion to Place Case on Hold).

(Doc. 31, at 6) (citing Doc. 28, at 5–6).

The Court found in the M&O III that although the Court gave Plaintiff an opportunity to clarify whether or not any other state law claims were asserted in his handwritten pages, he was not granted leave to submit a third amended complaint to include additional claims. (Doc. 31, at 6.) The Court found that Plaintiff's response to the M&O II sets forth multiple counts, including state law claims, that were not included in his SAC. *Id.* The Court noted that some of the "counts' set forth in Plaintiff's response "deal with damages and some are duplicative of claims that are being dismissed or are included in other counts" and "[o]ther claims are not proper causes of action." *Id.* at 7. The Court stated that it would "reserve ruling on whether or not Plaintiff should be granted leave to file a third amended complaint to add additional state law claims." *Id.* at 8.

The Court orders Plaintiff to show good cause why the Court should not decline to exercise supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(c)(4). The supplemental jurisdiction statute provides that the Court "may decline to exercise supplemental jurisdiction over a claim" "if . . . (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(4); *see also Select Energy Servs., Inc. v. Mammoth Energy Servs., Inc.*, 2019 WL 1434586, at *9 (W.D. Okla. 2019) ("Because the Court did not dismiss Plaintiffs' DTSA claim, Defendants' reliance on 28 U.S.C. § 1367(c)(3) is foreclosed. However, . . . the Court may nevertheless decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(4) in light of the pending state court litigation between certain of the parties.")

Plaintiff has pending state court actions based on these same claims, and the state court is better equipped to determine whether or not Plaintiff substantially complied with state law notice requirements. K.S.A. § 12-105b provides in relevant part that:

> any person having a claim against a municipality or against an
> employee of a municipality which could give rise to an action

brought under the Kansas tort claims act shall file a written notice as provided in this subsection before commencing such action. The notice shall be filed with the clerk or governing body of the municipality and shall contain the following: (A) The name and address of the claimant and the name and address of the claimant's attorney, if any; (B) a concise statement of the factual basis of the claim, including the date, time, place and circumstances of the act, omission or event complained of; (C) the name and address of any public officer or employee involved, if known; (D) a concise statement of the nature and the extent of the injury claimed to have been suffered; and (E) a statement of the amount of monetary damages that is being requested. In the filing of a notice of claim, substantial compliance with the provisions and requirements of this subsection shall constitute valid filing of a claim. The contents of such notice shall not be admissible in any subsequent action arising out of the claim. Once notice of the claim is filed, no action shall be commenced until after the claimant has received notice from the municipality that it has denied the claim or until after 120 days has passed following the filing of the notice of claim, whichever occurs first. A claim is deemed denied if the municipality fails to approve the claim in its entirety within 120 days unless the interested parties have reached a settlement before the expiration of that period. No person may initiate an action against a municipality or against an employee of a municipality unless the claim has been denied in whole or part. Any action brought pursuant to the Kansas tort claims act shall be commenced within the time period provided for in the code of civil procedure or it shall be forever barred, except that, a claimant shall have no less than 90 days from the date the claim is denied or deemed denied in which to commence an action.

K.S.A. § 12-105b(d)(1).

Claims against city employees acting within the scope of their employment are covered by K.S.A. § 12-105b(d)'s notice requirement. *Phillips v. Humble*, 587 F.3d 1267, 1272 (10th Cir. 2009) (citations omitted). The Court must dismiss state tort claims that fail to comply with § 12-105b(d). *Id.* at 1274. "Compliance with this statute is a jurisdictional prerequisite to asserting a claim for relief against a municipality." *Wenger v. Stoss*, 2025 WL 823244, at *4 (D. Kan. 2025) (citation omitted). "Thus, any 'party who fails to file the statutory statement is not entitled to relief.'" *Id.* (citation omitted). Courts have interpreted Fed. R. Civ. P. 9(c) as "requir[ing]

plaintiffs attempting to file a tort claim against a municipality or its employees to plead compliance with K.S.A. § 12-105b in their petition or complaint." *Id.* (citation omitted) ("Because substantial compliance with K.S.A. § 12-105b(d) is a condition precedent to commencing an action against the City . . . or its employees, the Court finds that it lacks subject matter jurisdiction over Plaintiff's tort claims."). "The court cannot get around this jurisdictional bar by choosing to exercise supplemental jurisdiction . . .." *Gardiner v. McBryde*, 2020WL 42272, at *14 (D. Kan. 2020) (where plaintiff also raised state-law tort claims, the court rejected plaintiff's argument that the notice requirement did not apply to 42 U.S.C. § 1983 actions).

In his original Complaint, Plaintiff states that he "wrote the Police Chief, I.A. and asked for formal complaint forms" and "filed a Notice of Intent to File and the I.A. Detective Courtney came to interview [Plaintiff] in response." (Doc. 1, at 6.) Plaintiff states that he "sent all the Defendants Notice and the Olathe Police acknowledged receipt." *Id.* Plaintiff filed in this Court a "Notice Intent to File State Tort Law Claims," indicating that he sent the original notice to Detective Courtney Giron, and stating that this current notice was just a formality. (Doc. 4, at 1.) Plaintiff's "notice" states that it was mailed to this Court on May 7, 2024, and "[o]n that same day it has been requested that the 10th District Court Clerk send a verified copy of this Notice to the following addresses included." *Id.* at 2. Plaintiff then lists addresses for the OPD Chief of Police, the Johnson County Board of Commissioners, the Olathe Superintendent, and the Johnson County District Attorney. *Id.* This notice does not comply with the statute, which requires a person to file the written notice "before commencing such action," and the notice is to be filed with "the clerk or governing body of the municipality." K.S.A. § 12-105b(d)(1). This Court is not the clerk or governing body of the municipality, and the Court received the notice the same day Plaintiff filed his original Complaint.

Plaintiff references his prior complaint to the OPD that resulted in an internal affairs investigation. Plaintiff submitted an affidavit that attached the internal affairs report, and Plaintiff claims that the report and response letter "are highly relevant to show the City of Olathe had actual notice of the officers' actions, and despite that notice, affirmatively chose to take no remedial action." (Doc. 46, at 3.) However, the statute requires a notice to be "filed with the clerk or governing body of the municipality."

It does not appear that Plaintiff can cure any deficiency in complying with the notice requirement by filing another amended complaint. In *Richardson v. Wangerin*, one of this Court's Magistrate Judges addressed the issue of "whether the plaintiff, after having properly invoked the court's federal question jurisdiction by filing her original complaint asserting § 1983 claims, can subsequently file an amended complaint invoking the court's supplemental jurisdiction over state law tort claims for which the plaintiff has since complied with the KTCA notice statute." *Richardson v. Wangerin*, 2024 WL 5245252, at *4 (D. Kan. 2024). The Court distinguished cases where there was a failure to comply with the notice statute and cases where the notice was properly filed prior to bringing the action, but the waiting period had not run until after the case was filed and prior to an amended complaint. *Id*. The Court cited a Kansas Court of Appeals case and held that:

> The Kansas Court of Appeals concluded that the plaintiffs' amended petition cured the defect in their original premature petition. *Id*. at 1167–68. *Steed* is not at odds with other case law interpreting the KTCA notice statute. As discussed above, in most cases dismissing state law tort claims (or denying leave to amend to assert those claims) for failure to comply with the KTCA notice statute, the plaintiff simply failed to comply with the KTCA notice statute. But where, as here and in *Steed*, the plaintiff seeks to file an amended pleading after complying with the KTCA notice requirements and in compliance with all other seemingly applicable deadlines (*e.g.*, the filing deadlines set forth in the KTCA as well as the applicable statute of limitations), the amended pleading can cure the defect.

*Id.* (citing *Sneed v. McPherson*, 221 P.3d 1157 (Kan. Ct. App. 2010)).  The Court further held that "another case in this district has followed *Sneed* to allow a plaintiff who had prematurely filed her complaint before complying with the KTCA notice statute to later cure that defect by filing an amended complaint after the pertinent defendant denied her claim."  *Id.* at *5 (citing *see Macias v. BNSF Railway*, No. 19-2305-JWL, 2020 2L 3469680, at *3–*4 (D. Kan. June 25, 2020); *see also Smith v. Williams*, No. 20-CV-2224-EFM-GEB, 2022 WL 4245479, at *4–*5 (D. Kan. Sept. 15, 2022) (holding state-law claims asserted in Second Amended Complaint, where plaintiff did not properly file her pre-suit KTCA notice but later complied with the KTCA notice statute did not relate back to the date of the original pleading; statute of limitations would be calculated based on the date of the plaintiff's second KTCA notice)).  In the instant case, it is not clear that Plaintiff filed a notice prior to initiating this action, and any attempt to amend his complaint after complying with the notice statute would likely result in the claims being barred by the statute of limitations.[2]

The uncertainties around Plaintiff's compliance with the KTCA notice requirements can be addressed in Plaintiff's pending state court actions.  Plaintiff has filed actions in state court involving these same state law claims.  *See Crump v. Gunthrie*, Case No. 24CV03729 (District Court of Johnson County, Kansas, filed July 22, 2024); *see also Crump v. Olathe Chief of Police*,

---

[2]  *See* K.S.A. § 60-513(4) (providing a two-year statute of limitations for "[a]n action for injury to the rights of another, not arising on contract, and not herein enumerated."); K.S.A. § 60-514 (providing a one-year statute of limitations for an action for: libel or slander; assault, battery, malicious prosecution, or false imprisonment; statutory penalty or forfeiture; and pursuant to K.S.A. 43-173); *see also Smith v. Williams*, 2022 WL 4245479, at n.16 (D. Kan. 2022) (finding defamation claim is governed by a one-year statute of limitations ) (citing K.S.A. § 60-514(a)); *Balance v. Johnson Cty. Bd. of Comm'rs.*, 2025 WL 2576762, at n.2 (D. Kan. 2025) (citing *Lee v. Reed*, 2016 WL 3855527, at *2 (D. Kan. 2016) (stating that the statute of limitations for plaintiff's § 1983 claim is two years, and "[f]or Plaintiff's state claim alleging intentional infliction of emotional distress, the applicable statute of limitations is also two years") (citing *Hallam v. Mercy Health Ctr. of Manhattan, Inc.*, 97 P.3d 492 (Kan. 2004) (citing K.S.A. 2003 Supp. 60-513(a)(4))); *Unruh v. City of Wichita*, 2022 WL 2392657, at *3 (Kan. Ct. App. 2022) (noting that a claim was brought outside the one-year statute of limitations for assault and battery but within the two-year statute of limitations for negligence).

Case No. 24CV02737 (District Court of Johnson County, Kansas, filed May 30, 2024).  Case

No. 24CV03729 was scheduled for a Case Management Conference on October 16, 2025; and

Case No. 24CV02737 is scheduled for a Status Conference on October 22, 2025.

In Case No. 24CV02737, the following defendants were served summonses on May 29,

2025:  Officer Lazzaro; Police Chief Mike Butaud;  Officer Kyle Clausius; Officer Billy Wyrick;

Officer Adam Wray; the City of Olathe; and Officer John Guthrie.   The case before this Court

names these same defendants, and adds the "City of Olathe Commissioners" as an additional

defendant.   Counsel for defendants has entered an appearance in Case No. 24CV02737, and

Plaintiff has filed multiple motions in that case.   On September 16, 2025, Plaintiff filed a "Motion

to Compel Full Disclosure, Oppose Res Judicata, and for Sanctions Under K.S.A. §§ 60-226 &

60-237."  In the motion, Plaintiff states that the "State and Federal cases involve different causes

of action, including state-specific tort claims" and that the "pending Federal case does not bar a

state action."

It does not appear from the docket that the state court has addressed the issue of whether

or not a notice of claim was properly filed.   *See Elven v. Bd. of Cty. Comm'rs of Cty. of Johnson*,

2020 WL 5761315, at *3 (D. Kan. 2020) (declining to exercise supplemental jurisdiction where

the parties had not spent a great deal of time on the state law claims, Plaintiff had refiled in state

court, and "[n]otions of comity and federalism dictate that the state court should decide the issues

of sufficiency and timeliness of Plaintiff's notice of claim under K.S.A. § 12-105b(d) in that

separate action"); *Ute Indian Tribe of Uintah and Ouray Reservation v. Lawrence*, 289 F. Supp.

3d 1242, 1245–46 (D. Utah 2018) (declining to exercise supplemental jurisdiction and stating that

"[t]he United States Supreme Court, and other lesser courts, have provided strong guidance that

this court should allow the state court to determine its own jurisdiction, except in the most

extraordinary circumstances"); *see also Vo v. Choi*, 49 F.4th 1167, 1171 (9th Cir. 2022) (affirming district court's decision to decline supplemental jurisdiction under § 1367(c)(4) where "it would not be 'fair' to defendants and 'an affront to the comity between federal and state courts' to allow plaintiffs to evade California's procedural requirements by bringing their claims in federal court"). In *Vo*, the court rejected plaintiff's argument that she had in fact met the heightened pleading requirements under state law, finding that forcing the district court to determine if that was true runs afoul of comity, and " '[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.' " *Vo*, 49 F.4th at 1173–74 ("If the federal district court is required to adjudicate these threshold matters, it will 'deprive the state courts of their critical role in effectuating the policies underlying those reforms.'").

Plaintiff should show good cause why this Court should not decline to exercise supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(c)(4), for the reasons stated herein.

## III.  Order for Return of Thumb Drives

On August 21, 2025, the Court ordered Plaintiff to return the thumb drives provided to him by the Interested Party, noting that Plaintiff filed a motion to strike some of the videos on the thumb drive.  (Doc. 70, at 2.)  The Court noted that it was considering striking some of the video content "that is irrelevant and/or warrants redactions."  *Id*.  Although the Court provided Plaintiff with a stamped, self-addressed envelope to return any and all thumb drives provided to him by the Interested Party, he has failed to do so.  Plaintiff should return the thumb drives as soon as possible.

Plaintiff has instead sent his own thumb drive to the Court, containing what he purports to be his own Exhibits A-4A, B5, D, and C.  Plaintiff has not filed a motion to file conventionally.

In fact, the Court denied his motion (Doc. 67) seeking to introduce this video evidence.  (Doc. 68.) Therefore, the Court directs the Clerk to return Plaintiff's thumb drive to him because he has not received permission to file conventionally.

## IV.  Conclusion

Plaintiff is given an opportunity to respond to the Report and to show good cause why his excessive force claims against Officers Lazzaro, Gunthrie, and Wray should not be dismissed. Failure to respond by the Court's deadline may result in dismissal of these claims without further notice for failure to state a claim.  Plaintiff is also ordered to show good cause why the Court should not decline to exercise supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(c)(4), for the reasons stated herein.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is granted until **November 17, 2025,** in which to respond to the Report and to show good cause why his excessive force claims against Officers Lazzaro, Gunthrie, and Wray should not be dismissed for failure to state a claim.

**IT IS FURTHER ORDERED** that Plaintiff is granted until **November 17, 2025,** in which to show good cause why the Court should not decline to exercise supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(c)(4), for the reasons stated herein.

**IT IS FURTHER ORDERED** that the Clerk is directed to return Plaintiff's thumb drive to him because he has not received permission to file conventionally.

**IT IS FURTHER ORDERED** that the Court grants Plaintiff until **October 31, 2025,** in which to comply with the Court's order at Doc. 70 by returning any and all thumb drives provided to him by the Interested Party.

**IT IS FURTHER ORDERED** that the Clerk is directed to correct the name of Defendant Clavsius on the docket to Kyle Clausius.[3]

**IT IS SO ORDERED**.

**Dated October 17, 2025, in Kansas City, Kansas.**

<u>**S/ John W. Lungstrum**</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**

---

[3] *See* Doc. 34–1, at 12 (OPD report by Officer Kyle Clausius).